IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JEFFREY KAUFMAN, | : |
| | : |
| Plaintiff, | : |
| | : |
| | : C.A. No.13-cv-359-SLR |
| v. | : |
| | : |
| ARNOLD A. ALLEMANG, AJAY BANGA, | : JURY TRIAL DEMANDED |
| JACQUELINE K. BARTON, JAMES A. BELL, | : |
| JEFF M. FETTIG, JOHN B. HESS, ANDREW N. | : |
| LIVERIS, PAUL POLMAN, DENNIS H. | : |
| REILLEY, JAMES M. RINGLER, RUTH G. | : |
| SHAW, WILLIAM WEIDEMAN, JOE HARLAN, | : |
| CHARLES KALIL, GEOFFERY MERSZEI, and | : |
| THE DOW CHEMICAL COMPANY, | : |
| | : |
| Defendants. | : |
| | : |
| | : |

**VERIFIED AMENDED COMPLAINT**

Plaintiff alleges, upon information and belief based upon, *inter alia*, the investigation

made by and through his attorneys, except as to those allegations that pertain to the plaintiff

himself, which are alleged upon knowledge, as follows:

**JURISDICTION**

1.      The jurisdiction of this court is founded upon:  (a) federal question jurisdiction,

pursuant to § 27 of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), 15

U.S.C. § 78aa, and 28 U.S.C. § 1331 and § 1340; (b) supplemental jurisdiction, 28 U.S.C. §

1367; and (c) diversity of citizenship, 28 U.S.C. § 1332(a)(3).  The plaintiff is a citizen of the

State of New Jersey.  The defendants are all citizens of jurisdictions other than New Jersey.  The

matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

2.      The claims herein arise under § 14(a) of the Exchange Act, 15 U.S.C. § 78n(a),

Rule 14a-9, 17 C.F.R. § 240.14a-9, and Schedule 14A, 17 C.F.R. § 240.14a-101 (Item 10(a)(1)),

of the United States Securities and Exchange Commission (the "SEC"), and the laws of

Delaware and, in part, depend upon the construction and effect of § 162(m) of the Internal

Revenue Code ("IRC"), 26 U.S.C. § 162(m) and Treas. Reg. § 1.162-27 of the United States

Internal Revenue Service (the "IRS") promulgated thereunder.  The meaning of these federal tax

provisions is an important issue of federal law that belongs in federal court.  *Grable & Sons*

*Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 312-15 (2005).

3.      This action is not a collusive one to confer jurisdiction that the court would

otherwise lack.

## THE PARTIES

4.      Defendant The Dow Chemical Company (the "Company" or "Dow")

manufactures and sells products that are used primarily as raw materials to make other products.

Dow is incorporated under the laws of the State of Delaware with its principal place of business

in the State of Michigan.  At the close of business on March 19, 2012, the record date for the

2012 annual meeting of Dow stockholders, there were 1,192,918,295 shares of Dow common

stock outstanding and entitled to vote.  There were then approximately 79,000 registered and

another 537,000 beneficial, street name stockholders of Dow common stock, which are traded on

the New York and Chicago stock exchanges under the symbol DOW.  The Company is a

publicly held corporation within the meaning of IRC § 162(m)(2).

5.      The plaintiff is a stockholder of the Company and has been a stockholder

continuously since 2006.

6.      As of the date of the original complaint filed in this action, there were eleven members of Dow's board of directors.  They are Arnold A. Allemang, Ajay Banga, Jacqueline K. Barton, James A. Bell, Jeff M. Fettig, John B. Hess, Andrew N. Liveris, Paul Polman, Dennis H. Reilley, James M. Ringler, and Ruth G. Shaw.  Defendant Hess announced his intention not to stand for reelection in 2013, but, as of the date of the original complaint filed in this action, he was a member of the board.

7.      Defendants Barton, Hess, Polman, Reilley, and Shaw were – as of the date of the original complaint and have been since 2009 – the five members of the compensation and leadership development committee of the Dow board of directors (the "Committee").

8.      Defendants Liveris, Weideman, Harlan, Kalil, and Merszei, in 2011, were Dow's "Named Executive Officers" (hereinafter "NEOs"), as defined in 17 C.F.R. § 229.402(a)(3), "Covered Employees" as defined in IRC § 162(a)(3) and Treas. Reg. § 1.162-27(c)(2), and Officers of the Company as defined in 10  Del. C. § 3114(b).  The proxy statement that was distributed to Dow's stockholders in advance of their annual meeting on May 10, 2012 (the "2012 Proxy Statement") referred to these five defendants as the "named executive officers" or as the "NEOs."

## WRONGFUL ACTS AND OMISSIONS

### I.      Background and History

9.      On May 12, 1988, the Dow 1988 Award and Option Plan (the "1988 Award Plan") became effective upon approval of the Dow stockholders.  The 1988 Award Plan provided for stock-based compensation, including options, stock appreciation rights, restricted stock, and deferred stock, to employees, but not to non-employee directors.  After President Clinton signed into law Pub. L. 103-66, known as the Omnibus Budget Reconciliation Act of

1993, on August 10, 1993, the Dow board approved amendments to that plan to conform to that statute, and the stockholders approved them at their annual meeting on May 15, 1997.

10.     Chapter 1 of Title XII of the Omnibus Budget Reconciliation Act added new provisions to the Internal Revenue Code of 1986 ("IRC"), including § 162(m).  Briefly, IRC § 162(m), entitled "Certain Excessive Employee Remuneration," limits the amount of tax deductions of publicly held corporations for the compensation to its top five senior executives.

11.     It is the public policy of the United States that corporate senior executive compensation must be reasonable, performance based, objectively determined and pre-approved by stockholders.  IRC § 162(m) reflects that public policy.  It subjects publicly-held corporations to special restrictions concerning the compensation paid to Covered Employees. Whereas IRC § 162(a)(1) generally allows the Company to take an income tax deduction for "a reasonable allowance for salaries or other compensation for personal services actually rendered" by its employees, IRC § 162(m) imposes requirements that must be met in order for the annual compensation to the Company's Covered Employees in excess of $1 million to be tax-deductible. The Covered Employees whose compensation is subject to these restrictions are the CEO and the "four highest compensated officers."  IRC § 162(m)(3); Treas. Reg. §1.162-27(c)(2)(i)(B).  Whether an employee is among the four highest compensated officers is determined under the compensation disclosure rules of the Securities Exchange Act of 1934 and not under the IRC.  Treas. Reg. §1.162-27(c)(2)(ii).  Compensation paid to the Company's Covered Employees in excess of $1 million per year each is not deductible unless it is provided in compliance with the requirements of IRC § 162(m) and its implementing regulation, Treas. Reg. § 1.162-27.

12.     IRC § 162(m) and Treas. Reg. § 1.162-27 provide that annual compensation in excess of $1 million is not tax-deductible unless the compensation is paid based on pre-established, objective performance goals that have been pre-approved by the stockholders.  IRC § 162(m)(4)(C)(i) requires that the performance goals be determined by an independent compensation committee of the corporation's board of directors.  A performance goal can qualify as pre-established only if the "outcome is substantially uncertain at the time" that the independent compensation committee actually establishes the goal.  Treas. Reg. § 1.162-27(e)(2)(i).  A pre-established performance goal must state, in terms of an objective formula or standard, the method for computing the amount of compensation payable to the Covered Employee if the goal is attained.  26 C.F.R. § 1.162-27(e)(2)(ii).  A performance goal can qualify as "objective" only if a "third party having knowledge of the relevant facts could determine whether the goal is met."  26 C.F.R. § 1.162-27(e)(2)(ii).

13.     IRC § 162(m)(4)(C)(ii) requires that the material terms under which the compensation will be paid, including the performance goals, be disclosed to the stockholders and approved by them before the payment of such compensation.  IRC § 162(m)(4)(C)(iii) requires that the independent compensation committee certify that the performance goals and any other material terms were in fact satisfied before such compensation is paid.  The terms of a pre-established, objective performance goal must preclude discretion to increase the amount payable upon attainment of the performance goal, but the independent compensation committee can exercise negative discretion to reduce the amount or not pay it at all.  Treas. Reg. § 1.162-27(e)(2)(iii)(A).

14.     Congress enacted IRC § 162(m) in 1993 as part of its important, historic, long-standing effort to regulate corporate affairs in favor of stockholders and other investors, as a

counterweight to the policies of many states to regulate corporations in favor of officers, directors, and other insiders.  One purpose of IRC § 162(m) is to align the performance incentive with the interests of shareholders.  *See* Internal Revenue Service Chief Counsel Attorney Memorandum, IRS AM 2009-006, 2009 WL 2138881 (July 17, 2009).

15.    Another purpose of IRC § 162(m) is to give stockholders a say on corporate executive compensation.  H.R. Conf. Rep. 103-213, 1993 WL 302291 at *587 ("the compensation must be approved by a majority of shares voting in a separate vote").  More recently, the United States has increased the voice of stockholders on corporate executive compensation with the advisory say-on-pay provisions of the Dodd-Frank Act. PL 111-203, July 21, 2010, 15 U.S.C. § 78n-1.

16.    Though the purpose of IRC § 162(m) is aimed at corporate governance, as a part of the IRC, it is construed like other IRC provisions.  Tax deductions are a matter of legislative grace and are to be construed narrowly unless the text of the statute authorizing the deductions reflects a contrary congressional intent.  The statute at issue here reflects no congressional intent for a broad construction.  IRC § 162(m)'s exception, allowing for a tax deduction for executive compensation greater than $1 million, applies to a narrow set of compensation programs that are strictly compliant with the statute and the regulations.

17.    In 1997, Dow's stockholders approved amendments to the 1988 Award Plan that set forth a number of categories from which performance goals could be set, as follows:  (i) earnings, (ii) earnings per share, (iii) share price, (iv) revenues, (v) total shareholder return, (vi) return on invested capital, equity, or assets, (vii) operating margins, (viii) sales growth, (ix) productivity improvement, (x) market share, and (xi) economic profit.  The amendments also included annual limits on individual equity-based compensation.  The stated purpose of the

amendments was "to ensure" that the 1988 Award Plan was in compliance with IRC § 162(m).

Specifically, the 1997 Proxy Statement represented:

> COMPLIANCE WITH SECTION 162(M) OF THE CODE:  The Plan was adopted before the existence of Section 162(m) of the Code and therefore was not specifically designed to meet its requirements.  Certain limits and other requirements are added to the Plan by the  Amendment to ensure that awards of Options, Stock Appreciation Rights, Deferred Stock and Restricted Stock may qualify as performance-based compensation for the purpose of Section 162(m).

These amendments took effect as of January 1, 1997.

18.     The 1997 Proxy Statement reported that IRC § 162(m) required disclosure of these performance goals to the stockholders and the stockholders' approval of them.  But Treas. Reg. § 1.162-27(e)(4)(vi) requires stockholder **reapproval** of these performance goals every five years.  Although representations in proxy statements since 1997 show that the Dow board was very focused on the tax consequences of NEO compensation and knew of this regulatory requirement, the board never sought or obtained such reapproval after the five year period elapsed in 2002.  Nevertheless, the Committee has made annual grants under the 1988 Award Plan to covered employees every year since 2002 – after the plan stopped being deductible under § 162(m) – most recently on February 10, 2012.  Neither the Committee nor the full board ever sought to explain any business purpose for the authorization of NEO compensation under the 1988 Award Plan after 2002 without soliciting stockholder reapproval.

19.     The Dow board has demonstrated in its proxy statements a comprehensive understanding of Dow's executive compensation plans and the tax consequences of such compensation.  For example, the 1997 Proxy Statement represented:

> For 1996, as in prior years, compensation paid to the Company's executive officers qualified as fully deductible under applicable tax laws.  The Committee continues to review the impact of federal tax regulations on compensation paid to executives.

And further:

IMPROVEMENTS TO LONG-TERM INCENTIVE COMPENSATION
The Committee believes that amendment of the current stock award plan is in
order, to increase the number of available award shares needed to compensate
executives with stock-based awards, with the objective of greater total returns to
stockholders.  Flexibility has been limited by our current stock plan, and proposed
amendments will be presented to stockholders at this year's Annual Meeting for
their approval.  ***Consistent with these objectives, we have once again approved a
complete study of stock-based long-term incentive programs for executives, to
be conducted by an outside consultant.***

(Emphasis added).

20.     In addition, the 1998 Proxy Statement represented: "For 1997, as in prior years,

compensation paid to the Company's executive officers qualified as fully deductible under

applicable tax laws."  The 1988 Award Plan, as approved by the stockholders at the 1997 annual

meeting, was in effect for the entire year 1997.

21.     The 1998 Proxy Statement also represented:

CHANGES TO LONG-TERM INCENTIVE COMPENSATION
At the December 1997 Compensation Committee meeting, the Committee
reviewed and approved for use in 1998 a proposal for long-term incentive
compensation that was made after a year-long study of alternatives and objectives.
Three types of stock-based incentives will comprise the long-term incentive
grants made to key executives during 1998. ...The third component of the plan,
Performance Shares, allows executives to earn shares of Dow stock based upon
the Company's financial performance over a three-year period. The plan financial
measures emphasize superior returns on capital, value growth and economic
performance at all points along the chemical pricing cycle.

The "third component" discussed above, was the part of the plan which required stockholder

approval every five years to remain tax-deductible under § 162(m).

22.     Again, a year later, the 1999 Proxy Statement represented: "For 1998, as in prior

years, compensation paid to the company's executive officers qualified as fully deductible under

applicable tax laws." And further, it represented:

LONG-TERM INCENTIVE COMPENSATION
In 1998, long-term incentive compensation for selected executives, including the
officers of the Company, consisted of three types of stock-based incentive grants.
...The third component of the program, Performance Shares, was also new in

8

1998.  Participating Executives will earn shares of deferred stock based upon the Company's financial performance over a three-year period (1998-2000).  The financial measures incorporated into the Performance Shares plan emphasize superior returns on capital, value growth, and economic performance at all points along the chemical pricing cycle.

23.     The next year, the 2000 Proxy Statement represented: "For 1999, as in prior years, compensation paid to the Company's executive officers qualified as fully deductible under applicable tax laws."  And further, it represented:

LONG-TERM INCENTIVE COMPENSATION
In 1999, long-term incentive compensation for selected executives, including the officers of the Company, consisted of three types of stock-based incentive grants. …The third component of the program for 1999 was Performance Shares. Participating Executives will earn shares of deferred stock based upon the Company's financial performance over a five-year period (1999-2003).  The financial measures incorporated into the Performance Shares plan emphasize superior returns on capital, value growth, and economic performance at all points along the chemical pricing cycle.  Long-term incentive compensation awards were approved by the Compensation Committee after evaluating the contribution of each executive to the Company's long-term performance and the importance of his or her responsibilities within the organization.

24.     The following year, the 2001 Proxy Statement represented:

For 2000, as in prior years, compensation paid to the Company's executive officers qualified as fully deductible under applicable tax laws, with the exception of $278,333 in base salary paid to the outgoing CEO (W.S. Stavropoulos) that was in excess of the $1,000,000 cap for purposes of tax deductibility.

The 2001 Proxy Statement also represented that Dow did not grant Performance Shares in 2000 but planned to use them in 2001.

25.     Thus, from 1997- 2001, the board represented its understanding of the tax issues surrounding Dow's executive compensation.  Nonetheless, thereafter, the board failed to ensure that Dow's compensation would remain tax-deductible.

II.     **2002-2012: The Dow Board Failed to Secure Stockholder Reapproval of the 1988 Award Plan Causing Performance Share Compensation Granted under It to Be Non-Tax-Deductible**

26.     In 2002, five years after the stockholders voted to make the 1988 Award Plan compliant with IRC § 162(m), the board furnished a proxy statement in connection with the 2002 annual meeting of stockholders that sought and obtained stockholder approval of an amendment to the 1988 Award Plan that changed the definition of "employee."  But at the same time, the board did not seek reapproval of the 1988 Award Plan itself or its performance goals, and it did not disclose its failure to do so to the stockholders.

27.     The 2002 Proxy Statement represented, "For 2001, compensation paid to the Company's executive officers qualified as fully deductible under applicable tax laws."  The 2002 Proxy Statement also represented that Dow had granted Performance Shares in 2001 with a five year performance period (2001-2005).

28.     The 2003 Proxy Statement represented that the "Committee has the authority to retain an independent compensation consultant to provide data, analysis and counsel as necessary."  But it omitted to disclose whether it had exercised that authority.

29.     The 2003 Proxy Statement also represented, "The Company's executive performance award and long-term incentive programs are stockholder-approved and are designed to comply with the requirements of Section 162(m)."  That statement concerning "long-term incentive programs" was no longer accurate after 2002 because the performance goals of the 1988 Award Plan were not approved by shareholders since 1997 as required by Treas. Reg. § 1.162-27(e)(4)(vi).  Demonstrating the board's understanding that it now failed to comply with §162(m), the 2003 Proxy Statement did not say whether the 2002 NEO compensation "qualified as fully deductible."

30.     The 2004 Proxy Statement represented that the 1988 Award Plan "was approved by Dow stockholders in 1988, 1997 and 2002." This representation was false as to 2002. At the same time, this representation demonstrates the board's understanding of the five-year reapproval required of Treas. Reg. § 1.162-27(e)(4)(vi).

31.     The 2004 Proxy Statement also represented:

> The Committee considers federal tax implications prior to making executive compensation decisions and the majority of equity-based compensation is fully deductible. The Committee is not, however, precluded from making payments or awards where appropriate to retain and provide competitive incentives to a Named Executive, whether or not the compensation qualifies for such deductibility.

> The Committee has retained an independent consultant to provide advice and counsel to the Committee. The consultant assists the Committee in evaluating and developing programs in order to pay executive officers competitively, motivate them to contribute to the Company's success and reward them for their performance.

32.     The 2005 Proxy Statement did not repeat the false statement made in 2004 that the stockholders had reapproved the 1988 Award Plan in 2002. But it did represent that the Committee had "retained an independent consultant to provide advice and counsel," and that it had "redesigned long-term incentive compensation ... for Senior Executives...." The 2005 Proxy Statement also represented that "The Committee considers federal tax implications prior to making executive compensation decisions and the majority of equity-based compensation is fully deductible."

33.     The 2006 Proxy Statement also did not repeat the false statement made in 2004 that the stockholders had reapproved the 1988 Award Plan in 2002. But it did represent that the Committee had retained an independent consultant and had considered federal tax implications prior to making executive compensation decisions. It also represented that "the majority of equity-based compensation is fully deductible."

11

34.     The ten proxy statements for 1997 through 2006 demonstrate that the Committee and the full board were attentive to and knew the tax consequences of NEO compensation, understood the requirements of IRC § 162(m), and hired consultants when required.  Strangely, they never explained the business purpose for not seeking stockholder reapproval of the 1988 Award Plan from 2002-2006.

35.     The proxy statement for the 2007 annual meeting of stockholders was required by a new SEC regulation to disclose, and it did disclose, "[t]he impact of the ... tax treatment of the particular form of compensation."  17 C.F.R. § 229.402(b)(2)(xii).  At pp. 23-24 the 2007 proxy statement represented:

> Section 162(m) of the Internal Revenue Code generally limits the tax deductibility of compensation paid by a public company to its CEO and certain other highly compensated executive officers to $1 million in the year the compensation becomes taxable to the executive.  There is an exception to the limit on deductibility for performance-based compensation that meets certain requirements.  The Company considers the impact of this rule when developing and implementing the performance award, stock option and performance share programs (described above) which are designed to meet the deductibility requirements.  Stockholders have approved the material terms of awards to the covered executives under these programs.

That last sentence was false or misleading, for since 1997 the stockholders had never reapproved the performance goals under the 1988 Award Plan to take advantage of the "exception to the limit on deductibility" for performance shares under IRC § 162(m), as that paragraph represents.  And because the next-to-last sentence is no doubt true, i.e., the directors did consider IRC § 162(m) when "implementing the performance award, stock option and performance share programs," the directors in 2007 knew that the 1988 Award Plan had not been reapproved by the stockholders in ten years.  Making that statement and not, at the same time, getting stockholder reapproval of the 1988 Award Plan was a breach of the duties of loyalty and care, including their disclosure duties.

12

36.     In addition, the 2007 Proxy Statement expressly referred to the 1988 Award Plan, representing that it was "Dow's omnibus stockholder-approved plan for equity awards to employees."  This representation was false or misleading as to performance shares because the stockholders had not approved such compensation since 1997 so that it could remain tax-deductible as required by Treas. Reg. § 1.162-27(e)(4)(vi).

37.     The directors knew that the 2007 proxy statement was false or misleading because in 2008 the annual proxy statement, at pp. 23-24, represented:

> Section 162(m) of the Internal Revenue Code generally limits the tax deductibility of compensation paid by a public company to its CEO and certain other highly compensated executive officers to $1 million in the year the compensation becomes taxable to the executive.  There is an exception to the limit on deductibility for performance-based compensation meeting certain requirements.  Although the Company does consider the impact of the above rule when making compensation decisions, Dow policy does not require all executive compensation to be tax-deductible.  In the interest of flexibility and overall benefit for the Company's stockholders, the Committee will continue to facilitate the awarding of responsible but adequate executive compensation while taking advantage of Section 162(m) whenever feasible.

This language deletes the representation that, "Stockholders have approved the material terms of awards to the covered executives," demonstrating that the directors and officers knew it was false.  Indeed, the new language in the 2008 proxy statement was repeated in substantially identical form in the next five annual proxy statements.  Also in the proxy statements for 2008, 2009, 2010, 2011, and 2012 was the representation that the 1988 Award Plan was "Dow's omnibus stockholder-approved plan for equity awards to employees."

38.     But the revised language in 2008 and in later years is still false or misleading, for the statement that the Committee would take "advantage of Section 162(m) whenever feasible" ignores the point that it is *not* feasible under the 1988 Award Plan as to performance shares because the stockholders had never reapproved its performance goals.

13

39.     For the 2007 through 2012 stockholders' annual meetings, the Dow board of directors solicited proxies by means of the proxy statement that contained the aforesaid misrepresentations.  Included on those boards were at least eight of the directors named in this action, i.e., defendants Allemang, Barton, Bell, Fettig, Hess, Liveris, Ringler, and Shaw.  Also on the board was defendant Merszei.  The members of the Committee in 2007 and 2008 were defendants Barton, Hess, Ringler, and Shaw.  Defendants Allemang, Barton, and Ringler were on the board of directors that solicited proxies for the 2002 annual meeting of Dow stockholders. Defendant Barton has been a member of the board since 1993 and a member of the Committee since 2003.  Defendant Shaw has been a member of the Committee since 2005.  Defendant Ringler has been a member of the board since 2001 and was a member of the Committee in 2003 through 2009.

## III.   Tolling of the Delaware Statute of Limitations Based Upon Misrepresentations of Tax-Deductibility of the 1988 Award Plan

40.     After 2002, the 1988 Award Plan was not able to provide tax-deductible compensation under § 162(m) because Treas. Reg. § 1.162-27(e)(4)(vi) requires that the

material terms of the performance goal must be disclosed to and reapproved by shareholders no later than the first shareholder meeting that occurs in the fifth year following the year in which shareholders previously approved the performance goal

41.     The 1988 Award Plan's performance goals were last disclosed to and approved by shareholders in 1997.  Therefore, to have provided tax-deductible compensation under § 162(m), the 1988 Award Plan's performance goals required stockholder reapproval in 2002 and 2007.

42.     Nonetheless, the 2007 Proxy Statement, when describing compensation paid under the 1988 Award Plan, stated that it is "designed to meet the deductibility requirements [of § 162(m)]. Stockholders have approved the material terms of awards to the covered executives under these programs."

43.     This statement was false or misleading because the stockholders' approval had

expired in 2002 and, as a result, the compensation after 2002 was not "designed to meet the

deductibility requirements [of § 162(m)]."

44.     After 2007, the statement set forth in ¶ 20 was deleted from all future proxy

statements and replaced with a statement that

> Although the Company does consider the impact of [§ 162(m)] when making
> compensation decisions, Dow policy does not require all executive compensation
> to be tax-deductible. In the interest of flexibility and overall benefit for the
> Company's stockholders, the Committee will continue to facilitate the awarding
> of responsible but adequate executive compensation while taking advantage of
> Section 162(m) whenever feasible.

The revised language in 2008 and later years was still false or misleading because the statement

that the Committee would take "advantage of Section 162(m) whenever feasible" ignores the

point that it has *not* been feasible under the 1988 Award Plan since 2003 because the

stockholders did not approve its performance goals five years after the approval in 1997 and

have not done so since.

45.     Moreover, the 2007 through 2012 Proxy Statements each identified the 1988

Award Plan as "Dow's omnibus stockholder-approved plan for equity awards to employees."

46.     For the 2007 stockholders' annual meeting, the Dow board of directors solicited

proxies by means of the proxy statement that contained the aforesaid misrepresentations.

Included on that board were eight of the directors named in this action, i.e., defendants

Allemang, Barton, Bell, Fettig, Hess, Liveris, Ringler, and Shaw.  Also on the board was

defendant Merszei.  The members of the Committee in 2006, 2007, and 2008 were defendants

Barton, Hess, Ringler, and Shaw.  Defendant Ringler was a member of the Committee in 2003

through 2009.

47.     The aforesaid misrepresentations in the proxy statements for the annual meetings of stockholders in 2007 through 2012 constituted active concealment of the non-tax deductibility of compensation to NEOs under the 1988 Award Plan for the years 2006 through 2012.  As a result, the statute of limitations under Delaware law is tolled as to those years.

IV.     **Acts and Omissions Concerning the 2012 Proxy Statement**

48.     The 2012 Proxy  Statement reported that an annual meeting of Dow stockholders would be held on May 10, 2012, and it represented that the full board of directors, i.e., defendants Allemang, Barton, Bell, Fettig, Hess, Liveris, Polman, Reilley, Ringler, and Shaw, were soliciting proxies to vote at the meeting to approve, inter alia, their own re-election to the board and the approval of the Dow Chemical Company 2012 Stock Incentive Plan (the "2012 Plan"), in which they participate.  The members of the full board each permitted the use of his or her name to solicit the proxies for the 2012 annual meeting.  The NEOs, i.e., defendants Liveris, Weideman, Harlan, Kalil, and Merszei, each permitted the use of his name to solicit proxies for the 2012 annual meeting because each of them participates in the 2012 Plan.  The NEOs' names appear throughout the 2012 Proxy Statement, for Liveris 55 times, for Weideman 32 times, for Harlan 17 times, for Kalil 21 times, and for Merszei 37 times.

49.     The 2012 Proxy Statement contained the same defects described above in the previous proxy statements, but also suffered from a host of new problems.

50.     In the first place, as with the proxy statements described above, the 2012 Proxy Statement's representation that the 1988 Award Plan was "Dow's omnibus stockholder-approved plan for equity awards to employees" was a materially false or misleading statement because the stockholders had not reapproved it since 1997 as is required by Treas. Reg. § 1.162-27(e)(4)(vi).

51.     The defendants knew that the aforesaid representation was false or misleading because the 2012 Proxy Statement also said:

> In order for awards to be eligible to qualify as "performance-based compensation" for purposes of Section 162(m) of the Code, the material terms of the performance goals under which compensation may be paid must be disclosed to and approved by Dow's stockholders every five years.

The Dow board, being attentive to and informed about NEO compensation and its tax consequences would have seen the tension between these two representations if they had read the 2012 Proxy Statement.

52.     In addition, as described below, the 2012 Proxy Statement failed to properly explain the dramatic increase in Director and NEO compensation under the 2012 Plan, misrepresented the tax-deductibility of the 2012 Plan, misrepresented the complexity of § 162(m), and failed to disclose the number of participants in the 2012 Plan.

**A.     Omission of the Material Increase in Maximum Compensation for Directors and NEOs**

53.     By its terms, the 2012 Plan provides that each participant can receive an annual grant of equity incentive compensation equal to as many as 3,000,000 Dow common shares and an annual cash incentive bonus of as much as $15,000,000.  The price of Dow stock was approximately $32 per share on May 10, 2012, the date of the shareholder meeting at which the 2012 Plan was proposed.  Consequently, each participant can receive in a single year as much as $96,000,000 in stock plus $15,000,000 in cash, for *a total of $111 million per participant, per year*.  Previously, each director was limited to an annual maximum of approximately $800,000, and each NEO was limited to an annual maximum of approximately $20 million.  This absurd increase in potential compensation was never explained to shareholders.  But now, having gained this authority, the board of directors can hand the equivalent of nearly all of Dow's profits over to a select few individuals, including themselves.  This action seeks to recover for this abusive, misleading proxy solicitation while requesting relief sufficient to ensure that the anticipated harm will be remediated.

54.     Both NEOs and directors are participants in the 2012 Plan.  This means that the five members of the Committee can award themselves $555 million in a year.  And, because section 6 of the 2012 Plan allows the board of directors to usurp the Committee's authority for making 2012 Plan awards, these ten members can award themselves a total of $1.11 billion in any year.  When the NEOs (excluding Defendant Liveris who is also a director) are added in, this one plan can dole out an aggregate of $1.554 billion to fourteen individuals in one year.

55.     Dow's net income for 2012 was $1.1 billion.  Dow's net income for 2011 was $2.784 billion.  Accordingly, the nine non-employee directors and the five NEOs could receive, in the aggregate, more than 141% of Dow's 2012 net income and as much as 55.8% of Dow's 2011 net income.  This amount is more than 61% of net income for 2010 and more than twice the net income for 2009.

56.     The 2012 Plan replaced both the 1988 Award Plan, which awarded only NEOs, and the 2003 Non-Employee Directors' Stock Incentive Plan (the "Directors' Plan"), which awarded only non-employee directors.  But the 2012 Proxy Statement failed to disclose that the *previous annual limit for an individual director* under the Directors' Plan was 25,000 shares, *worth approximately $800,000* on May 10, 2012, and that the previous annual limit for an individual NEO under the 1988 Plan was 1,200,000 stock options and stock appreciation rights annually, worth approximately $10,700,000, plus 900,000 shares of deferred stock or restricted stock during any three-year period, worth approximately $9,600,000 per year on May 10, 2012, for a total maximum of $20,300,000 per NEO per year.  The Directors' Plan did not allow cash awards to non-employee directors, but the 2012 Plan allows them cash in the amount of $15 million per year each.  Consequently, the 2012 Proxy Statement failed to disclose that potential director compensation was being increased more than a hundred-fold, including cash for the first

time, under the 2012 Plan, and potential NEO compensation was being quintupled under the 2012 Plan.

## B.    Misrepresentation of Tax-Deductibility of the 2012 Plan

57.    Generally, companies are allowed to deduct "a reasonable allowance for salaries or other compensation" paid to their employees "for personal services actually rendered."  I.R.C. § 162(a)(1).  Section 162(m), however, provides that compensation to a corporation's "covered employees" in excess of $1 million is unreasonable and therefore non-deductible unless it is performance-based, pursuant to pre-established, objective standards that are approved by the stockholders.  As stated above (¶ 11), the "covered employees" are the chief executive officer and a company's four other highest-paid officers.  Treas. Reg. § 1.162-27(c)(2)(i)(A) & (B).  So the NEOs are Dow's "covered employees."

58.    To be deductible under § 162(m), a compensation plan must comply with the statute and regulation that the I.R.S. has promulgated under it.   Because the 2012 Plan does not provide the "formula used to calculate the amount of compensation to be paid to the employee if the performance goal is attained," the Plan must disclose "the maximum amount of compensation that could be paid to any employee…."  Treas. Reg. § 1.162-27 (e)(4)(i).  Here, however, the maximum award under the 2012 Plan – $111 million per participant – is so high it is illusory.  With respect to stock options and stock appreciation rights, both of which may be granted under the 2012 Plan, no formula is required, and the plan must state "the maximum number of shares with respect to which options or rights may be granted during a specified period to any employee."  Treas. Reg. § 1.162-27(e)(2)(vi)(A).  The defendants have admitted in their brief at p. 13, D.I. 6, "The maximum amounts provided are simply that:  theoretical *maximum* amounts."  (italics in original).  It is the equivalent of stating that the plan has a

maximum that the Company will never approach, which is to say that Dow has not disclosed a true maximum.

59.     Indeed, if this maximum could be reached by any participant, that compensation would offend I.R.C. § 162(a)(1), which requires that for compensation to be deductible it must be "reasonable."  Corporate executive compensation is not tax deductible unless it meets the requirements of both § 162(a)(1) and (m)(4).  *See* Treas. Reg. § 1.162-27(a).

60.     The 2012 Proxy Statement represented that the 2012 Plan was "designed" to allow the Company to pay compensation that would be deductible under § 162(m).  This maximum renders the 2012 Plan non-deductible under either § 162(m) or § 162(a), meaning its inclusion in the 2012 Plan makes that plan "designed" to provide only ***non***-tax-deductible compensation under § 162(m).

61.     There are additional reasons the 2012 Plan is not "designed" to comply with § 162(m).  For one, the formulation of the performance criteria contravenes the requirements of Treas. Reg. § 1.162-27(e)(4)(i).  This regulations provides:

> The material terms of the performance goal under which the compensation is to be paid must be disclosed to and subsequently approved by the shareholders of the publicly held corporation before the compensation is paid.

62.     Congress specifically told corporations that

> it would not be adequate if the shareholders were merely informed that an executive would be awarded $x "if the executive meets certain performance goals established by the compensation committee."

H.R. REP. NO. 103-213, 1993 WL 302291, at 588 (1993) (Conf. Rep.).  Therefore, it is insufficient to tell shareholders that the compensation committee will later decide what criteria to use.  Performance criteria must be fully-defined and disclosed to enable shareholders' ***informed*** approval.

63.     In defining performance criteria, § 12(b) of the 2012 Plan provides:

*Qualifying Performance Criteria*.  For purposes of this Plan, the term "Qualifying Performance Criteria" shall mean any one or more of the following performance criteria, ***or derivations of such performance criteria***, either individually, alternatively, or in any combination, …:  (i) cash flow (before or after dividends), (ii) earnings, (iii) earnings per share (including earnings before interest, taxes, depreciation and amortization), (iv) book value per share, (v) stock price, (vi) return on equity, (vii) total shareholder return, (viii) improvements on capital structure (ix) working capital, (x) return on capital (including return on total capital or return on invested capital ), (xi) return on assets or net assets, (xii) market capitalization, (xiii) economic value added, (xiv) sales growth, (xv) productivity improvement, (xvi) debt leverage (debt to capital), (xvii) revenue, (xviii) income or net income, (xix) operating income, (xx) operating profit or net operating profit, (xxi) maintenance or improvement of operating margin or profit margin, (xxii) return on operating revenue, (xxiii) cash from operations, (xxiv) operating ratio, (xxv) operating revenue, (xxvi) market share, (xxvii) product development or release schedules, (xxviii) new product innovation, (xxix) economic profit, (xxx) profitability of an identifiable business unit or product, (xxxi) product cost reduction through advanced technology, (xxxii) brand recognition/acceptance, (xxxiii) product ship targets, (xxxiv) cost reductions, (xxxv) customer service, (xxxvi) customer satisfaction or (xxxvii) the sales of assets or subsidiaries.

(Emphasis added.)

64.     These 37 different criteria are not the only criteria available to the Committee because the definition expressly includes "derivations of such performance criteria," thereby ***creating an infinite number of performance goals from which the Committee may later select to determine performance***.  By providing a never-ending list of performance criteria, the 2012 Plan effectively tells shareholders exactly what Congress called insufficient: that the NEOs "would be awarded $x 'if the executive meets certain performance goals established by the compensation committee,'" without specifying what they were or how they measured achievement.

65.     In addition, this list contains measures that cannot be quantified objectively, including, among others, "(xxviii) new product innovation," "(xxxv) customer service, [and]

(xxxvi) customer satisfaction."  Such criteria contravene Treas. Reg. § 1.162-27(e)(2)(ii)'s

requirement that such goals

> state, in terms of an objective formula or standard, the method for computing the
> amount of compensation payable to the employee if the goal is attained ... such
> that a third party having knowledge of the relevant performance results could
> calculate the amount to be paid to the employee.

These goals escape objective calculation. Nothing is proffered to explain how product

innovation, customer service or customer satisfaction, among others, can be quantified by the

Committee.  Lacking such explanation of methodology, these goals cannot live up to the

regulation's requirement.

### C.    Misrepresentations and Omissions Regarding the Complexity of §162(m)

66.    The 2012 Proxy Statement makes the following materially false or misleading

representation:

> The rules and regulations promulgated under Section 162(m) are complicated and
> subject to change from time to time, sometimes with retroactive effective [sic].  In
> addition, a number of requirements must be met in order for particular
> compensation to so qualify.  As such, there can be no assurance that any
> compensation awarded or paid under the 2012 Incentive Plan will be fully
> deductible under all circumstances.

67.    The IRS published the final text of the regulation on December 20, 1995, 60 F.R.

65534, 65537, 1995 WL 749738, and amended it only once to correct three printing errors.  61

F.R. 4350, 1996 WL 43817 (IRS Feb. 6, 1996).

68.    Treas. Reg. § 1.162-27 is not complicated or difficult except for those attempting

to avoid its clear requirements.  The only reason for including the aforesaid misrepresentation in

the 2012 Proxy Statement is to seek cover from liability for making false or misleading

statements about the 2012 Plan.

### D.     Omission Regarding the Participants in the 2012 Plan

69.     The 2012 Proxy Statement omits to disclose information specifically and

expressly required by 17 C.F.R. § 240.14a-101 (Item 10(a)(1)), which states that

> If action is to be taken with respect to any [compensation] plan pursuant to which cash or noncash compensation may be paid or distributed, [registrants must] furnish the following information:  (a) Plans subject to security holder action.  (1) Describe briefly the material features of the plan being acted upon, identify each class of persons who will be eligible to participate therein, *indicate the approximate number of persons in each such class, and state the basis of such participation.*

(emphasis added).  By contrast, the 2012 Proxy Statement, does not state any number of persons

who will be eligible to participate in the 2012 Plan.

70.     This omission was a contrivance in contravention of a regulatory requirement.

All the defendants were aware of this requirement because another proposed compensation plan

was on the agenda for approval at the 2012 annual stockholders' meeting, i.e., The Dow

Chemical Company 2012 Employee Stock Purchase Plan.  As to that plan, the 2012 Proxy

Statement reported, "If the Plan is approved, approximately 47,000 employees will be eligible

for participation."

### PRE-SUIT DEMAND IS EXCUSED

71.     Plaintiff has not made any demand on the Company's board of directors to

institute this action against the individual defendants.

72.     The entire board of directors is interested in the stockholders' approval of the

2012 Plan and benefited from the misrepresentations and omissions in the 2012 Proxy Statement.

All the members of the board of directors are eligible to participate in the 2012 Plan and are

interested in the payments to be made under the 2012 Plan.

73.     From 2007 onward, the Committee, at times with defendant Liveris constituting a majority of the board of directors, authorized compensation under the 1988 Plan that was non-tax-deductible under § 162(m) while claiming it was tax-deductible in Company proxy statements.  Those false disclosures were not the product of a valid exercise of business judgment.  After 2007, the board of directors made a conscious decision to cover up the non-tax-deductibility of the 1988 Plan and refrain from seeking reapproval of the 1988 Plan.  That concealment of the truth was not the product of a valid exercise of business judgment.

74.     The failure of the board to gained shareholder reapproval of the 1988 Award Plan after 2002 combined with the payment of NEO compensation under it was not the product of a valid exercise of business judgment.

75.     The materially false representations and omissions in the 2007 through 2012 Proxy Statements were not the product of a valid exercise of business judgment.

## COUNT I
### Stockholder's Derivative Claim under the Exchange Act and Delaware Law for Omitting the Extraordinary Increases to Director and NEO Compensation under the 2012 Plan

76.     Plaintiff realleges ¶¶ 1-75 and incorporates them herein by reference.

77.     The 2012 Proxy Statement was materially false or misleading in that it omitted to disclose the extraordinary increase in director and NEO maximum compensation under the 2012 Plan.

78.     The acts of the NEOs and directors in soliciting proxies and in permitting the use of their names in the 2012 Proxy Statement, by which they stood to realize substantial benefits in the form of the extraordinary increase in maximum equity and non-equity compensation, were in violation of § 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Rule 14a-9, 17 C.F.R. § 240.14a-9 and Delaware Law.

24

79.     As a result of this conduct by the NEOs and directors, Dow has been and will be injured.

80.     The court should enjoin Dow's use of the 2012 Plan until corrective disclosures are made and a new vote taken, and should require an equitable accounting and disgorgement of all compensation awarded by the Committee or the board of directors under the 2012 Plan in violation of 15 U.S.C. § 78n(a) and the rules promulgated thereunder and Delaware Law.

## COUNT II
**Stockholder's Derivative Claim under IRC § 162(m), the Exchange Act, and Delaware Law for Falsely Stating that the 2012 Plan Was Designed to Enable Dow to Pay Tax-Deductible Compensation to the NEOs**

81.     Plaintiff realleges ¶¶ 1-75 and incorporates them by reference.

82.     The 2012 Proxy Statement was materially false or misleading in that it represented that the 2012 Plan was designed to enable Dow to pay its NEOs compensation that would be tax-deductible under IRC § 162(m).

83.     The acts of the NEOs and directors in soliciting proxies and in permitting the use of their names in the 2012 Proxy Statement, by which they stood to realize substantial benefits in the form of the extraordinary increase in maximum equity and non-equity compensation, were in violation of § 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Rule 14a-9, 17 C.F.R. § 240.14a-9 and Delaware Law.

84.     As a result of this conduct by the NEOs and directors, Dow has been and will be injured.

85.     The court should enjoin Dow's use of the 2012 Plan until corrective disclosures are made and a new vote taken, and should require an equitable accounting and disgorgement of all compensation awarded by the Committee or the board of directors under the 2012 Plan in violation of 15 U.S.C. § 78n(a) and the rules promulgated thereunder and Delaware Law.

## COUNT III
**Stockholder's Derivative Claim under IRC § 162(m), the Exchange Act, and Delaware Law for Omitting to State the Number of Eligible Participants in the 2012 Plan**

86.    Plaintiff realleges ¶¶ 1-75 and incorporates them by reference.

87.    The 2012 Proxy Statement contravened 17 C.F.R. § 240.140-101 (Item 10(a)(1)), by failing to disclose the information specifically required by it – specifically the number of eligible participants in the 2012 Plan.

88.    The acts of the NEOs and directors in soliciting proxies and in permitting the use of their names in the 2012 Proxy Statement, by which they stood to realize substantial benefits in the form of the extraordinary increase in maximum equity and non-equity compensation, were in violation of § 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Rule 14a-9, 17 C.F.R. § 240.14a-9 and Delaware Law.

89.    As a result of this conduct by the NEOs and directors, Dow has been and will be injured.

90.    The court should enjoin Dow's use of the 2012 Plan until corrective disclosures are made and a new vote taken, and should require an equitable accounting and disgorgement of all compensation awarded by the Committee or the board of directors under the 2012 Plan in violation of 15 U.S.C. § 78n(a) and the rules promulgated thereunder and Delaware Law.

## COUNT IV
**Stockholder's Derivative Claim under the Exchange Act and Delaware Law for Excessive, Wasteful Compensation under the 2012 Plan**

91.    Plaintiff realleges ¶¶ 1-75 and incorporates them herein by reference.

92.    The conduct of the directors and the NEOs in obtaining substantial benefits in the form of the extraordinary increase in maximum equity and non-equity compensation was a breach of their fiduciary duties of loyalty and care under Delaware law.

93.    As a result of this conduct by the officers and directors, Dow has been and will be injured.

94.    The court should terminate the 2012 Plan and require an equitable accounting and disgorgement of all compensation awarded by the Committee or the board of directors under the 2012 Plan in violation of the Exchange act and Delaware law.

## COUNT V
### Stockholder's Derivative Claim under the Exchange Act and Delaware Law for Unjust Enrichment

95.    Plaintiff realleges ¶¶ 1-75 and incorporates them herein by reference.

96.    The NEOs and directors have been or will be unjustly enriched as a result of their acceptance of compensation under a plan that was insufficiently disclosed to the stockholders who were solicited to approve it.  The NEOs' and directors' acceptance of such improperly paid compensation has or will constitute unjust enrichment under the Exchange Act and Delaware Law.

97.    As a result of the actions of the NEOs and directors, the Company has been and will be damaged.

98.    Plaintiff has no adequate remedy at law.

99.    Termination of the 2012 Plan, an injunction, an equitable accounting with disgorgement, and reimbursement are required to redress the injury.

## COUNT VI
### Stockholder's Derivative Claim under the Exchange Act and Delaware Law for False Statements in the 2007-2012 Proxy Statements regarding the 1988 Award Plan and for Failing to Gain Shareholder Reapproval of the Performance Goals

100.    Plaintiff realleges ¶¶ 1-75 and incorporates them herein by reference.

101.    The directors' failure to seek stockholder reapproval in 2002 and thereafter of the performance goals in the 1988 Award Plan while stating in the 2007-2012 Proxy Statements that

27

it had been reapproved by the stockholders was a breach of their duties of loyalty and care, including their disclosure duties.

102.    The directors' false statement in the 2007 Proxy Statement and thereafter that the 1988 Award Plan could provide compensation that was tax-deductible under § 162(m) was a breach of their duties of loyalty and care, including their disclosure duties.

103.    The directors' misleading statements concerning the tax-deductibility of the 1988 Plan  under  § 162(m) in the 2008-2012 Proxy Statements was a breach of their duties of loyalty and care, including their disclosure duties.

104.    The Committee's award of compensation under the 1988 Award Plan after 2002 was a breach of their duties of loyalty and care.

105.    The NEO's acceptance of compensation under the 1988 Plan after 2002 was a breach of their duty of loyalty and care.

106.    This conduct of directors and officers has injured Dow in the form of the payment of non-tax-deductible compensation, and the injury will continue to the extent that present and former NEOs continue to hold compensation granted under the 1988 Plan in 2006 through 2012.

107.    The court should order corrective disclosures and an equitable accounting and disgorgement for these wrongs.

108.    As alleged in ¶¶ 40-47, the statute of limitations is tolled.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for the following relief:

A.    An order requiring truthful disclosures and a new stockholder vote on the 2012 Plan;

B.    An order terminating the 2012 Plan;

28

C.      An equitable accounting and disgorgement;

D.      An order rescinding all awards under the 2012 Plan;

E.      An order rescinding all awards granted to covered employees under the 1988 Plan after the 2002 annual meeting of stockholders;

F.      An order awarding plaintiff the costs and disbursements of this action including reasonable accountants', experts', and attorneys' fees; and

G.      Granting such additional relief, whether similar or different, as the interests of justice or equity may require.

### **JURY DEMAND**

Plaintiff demands a trial by jury.


Dated:   July 19, 2013

                                        FARNAN LLP


                                        /s/ Brian E. Farnan
                                        Joseph J. Farnan, Jr. (Bar No. 100245)
*Of Counsel*                            Joseph J. Farnan, III (Bar No. 3945)
BARRACK, RODOS & BACINE                 Brian Farnan (Bar No. 4089)
Alexander Arnold Gershon                12th Floor
Michael A. Toomey                       919 N. Market Street
425 Park Avenue - 31st Floor            Wilmington, Delaware 19801
New York, New York 10022                Tel:  (302) 777-0300
Telephone:  (212) 688-0782              Fax: (302) 777-0301
                                        bfarnan@farnanlaw.com
BARRACK, RODOS & BACINE
Daniel E. Bacine                        *Attorneys for Plaintiff*
3300 Two Commerce Square
2001 Market Street
Philadelphia, Pennsylvania 19103
Telephone:  (215) 963-0600

29