## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JEFFREY KAUFMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 13-359-SLR |
| | ) |
| ARNOLD A. ALLEMANG, AJAY | ) |
| BANGA, JACQUELINE K. BARTON, | ) |
| JAMES A. BELL, JEFF M. FETTIG, | ) |
| JOHN B. HESS, ANDREW N. | ) |
| LIVERIS, PAUL POLMAN, DENNIS | ) |
| H. REILLEY, JAMES M. RINGLER, | ) |
| RUTH G. SHAW, WILLIAM | ) |
| WEIDEMAN, JOE HARLAN, CHARLES ) | |
| KALIL, GEOFFERY MERSZEI, and | ) |
| THE DOW CHEMICAL COMPANY, | ) |
| | ) |
| Defendants, | ) |
| | ) |

Joseph James Farnan, III, Esquire, Brian Farnan, Esquire, and Rosemary Jean
Piergiovanni, Esquire of Farnan LLP, Wilmington, Delaware. Counsel for Plaintiff.

Kenneth Nachbar, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington,
Delaware. Counsel for Defendants.

## MEMORANDUM OPINION

Dated: September 30 , 2014
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On March 5, 2013, shareholder plaintiff Jeffery Kaufman ("plaintiff") filed suit
against nominal defendant The Dow Chemical Company ("Dow"), the eleven members
of its board of directors, and Dow's five named executive officers (collectively,
"defendants"), asserting direct and derivative claims related to a series of allegedly false
and misleading proxy statements issued annually between 2007 and 2012. (D.I. 1) On
May 14, 2013, defendants moved to dismiss the complaint. (D.I. 5) Plaintiff amended
his complaint on July 19, 2013, alleging only derivative claims relating to the proxy
statements issued between 2007 and 2012. (D.I. 9) Specifically, plaintiff alleges
breaches of the duty of disclosure and fiduciary duty, waste of corporate assets, and
unjust enrichment. (*Id.*) Currently before the court is defendants' motion to dismiss
pursuant to Federal Rules of Civil Procedure 23.1 and 12(b)(6). (D.I. 11) The court has
jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1340, and 1367.

## II. BACKGROUND

### A. The Parties

Plaintiff, a citizen of New Jersey, has been a stockholder of Dow continuously
since 2006. (D.I. 9 at ¶¶ 1, 5) Dow is a publicly held corporation, incorporated in
Delaware, with its principal place of business in Michigan. Dow manufactures and sells
products, including raw materials to make other products. (*Id.* at ¶ 4)

The individual defendants described below are all citizens of states other than
New Jersey. (*Id.* at ¶ 1) As of the date of the original complaint filed in this action, the
eleven members of the Dow board of directors ("board") were Arnold A. Allemang

("Allemang"), Ajay Banga ("Banga"), Jacqueline K. Barton ("Barton"), James A. Bell ("Bell"), Jeff M. Fettig ("Fettig"), John B. Hess ("Hess"),[1] Andrew N. Liveris ("Liveris"), Paul Polman ("Polman"), Dennis H. Reilley ("Reilley"), James M. Ringler ("Ringler"), and Ruth G. Shaw ("Shaw"). For the 2007 through 2012 stockholders' annual meetings, the board soliciting proxies consisted of at least Allemang, Barton, Bell, Fettig, Hess, Liveris, Geoffery Merszei ("Merszei"), Ringler, and Shaw. (*Id.* at ¶¶ 6-8, 39)

Since 2009, Barton, Hess, Polman, Reilley, and Shaw were the five members of the compensation and leadership development committee (the "committee"). In 2011, Liveris, William Weideman ("Weideman"), Joe Harlan ("Harlan"), Charles Kalil ("Kalil"), and Merszei were Dow's "Named Executive Officers" ("NEOs"). The members of the committee in 2007 and 2008 were Barton, Hess, Ringler, and Shaw. (*Id.*)

## B. The 1988 Plan

On May 12, 1988, the Dow 1988 Award and Option Plan (the "1988 plan") became effective upon approval of the Dow stockholders. The 1988 plan provided for stock-based compensation, including options, stock appreciation rights, restricted stock, and deferred stock, to employees but not to non-employee directors. The 1988 plan was amended on August 10, 1993 by the board to conform with new provisions of the Internal Revenue Code § 162(m); the stockholders approved such amendments at their annual meeting on May 15, 1997.[2] (D.I. 9 at ¶¶ 9-10, 17) The 1997 amendments

---

[1]Defendant Hess announced his intention not to stand for reelection in 2013, but was a member of the board as of the date of the original complaint filed in this action.

[2]Specifically, the 1997 proxy statement represented:

COMPLIANCE WITH SECTION 162(M) OF THE CODE: The Plan was

2

to the 1988 plan

> set forth a number of categories from which performance goals could be set, as follows: (i) earnings, (ii) earnings per share, (iii) share price, (iv) revenues, (v) total shareholder return, (vi) return on invested capital, equity, or assets, (vii) operating margins, (viii) sales growth, (ix) productivity improvement, (x) market share, and (xi) economic profit.  The amendments also included annual limits on individual equity-based compensation.

(*Id.* at ¶ 17)  While the 1997 proxy statement reported that I.R.C. § 162(m) required

disclosure of these performance goals to the stockholders and the stockholders'

approval thereof, plaintiff alleges that Treasury Regulation § 1.162-27(e)(4)(vi) requires

stockholder reapproval of the performance goals every five years.  (*Id.* at ¶ 18)  The

board did not seek or obtain such reapproval after the five-year period elapsed in 2002;

however, the committee continued to make annual grants under the 1988 plan, even

though the 1988 plan stopped being deductible under § 162(m) after 2002.

Plaintiff alleges that the board was fully aware of the tax consequences of its

executive compensation based on statements made in Dow's proxy statements

between 1997 and 2001.[3]  (*Id.* at ¶¶ 19–25)  In 2002, the board sought and obtained

stockholder approval of an amendment to the 1988 plan that changed the definition of

_____

> adopted before the existence of Section 162(m) of the Code and therefore was not specifically designed to meet its requirements. Certain limits and other requirements are added to the Plan by the Amendment to ensure that awards of Options, Stock Appreciation Rights, Deferred Stock and Restricted Stock may qualify as performance-based compensation for the purpose of Section 162(m).

(D.I. 9 at ¶ 17)

[3]For example, the 1999 proxy statement represented:  "For 1998, as in prior years, compensation paid to the company's executive officers qualified as fully deductible under the applicable tax laws."  (D.I. 9 at ¶ 22)

3

"employee," but did not seek reapproval of the plan itself or its performance goals. (*Id.* at ¶ 26)

Plaintiff alleges that each of the proxy statements from 2002-2006 contained false representations regarding the tax deductibility of the executive compensation. For example, the 2003 proxy statement represented that Dow's "executive performance award and long-term incentive programs are stockholder-approved and are designed to comply with the requirements of Section 162(m)." The 2004 proxy statement represented that the 1988 plan was "approved by Dow stockholders in 1988, 1997, and 2002." (*Id.* at ¶¶ 26-34)

In accordance with 17 C.F.R. § 229.402(b)(2)(xii), the 2007 proxy statement disclosed "[t]he impact of the . . . tax treatment of the particular form of compensation." (*Id.* at ¶ 35) The 2007 proxy statement represented:

> Section 162(m) of the Internal Revenue Code generally limits the tax deductibility of compensation paid by a public company to its CEO and certain other highly compensated executive officers to $1 million in the year the compensation becomes taxable to the executive. There is an exception to the limit on deductibility for performance-based compensation that meets certain requirements. The Company considers the impact of this rule when developing and implementing the performance award, stock option and performance share programs (described above) which are designed to meet the deductibility requirements. Stockholders have approved the material terms of awards to the covered executives under these programs.

(*Id.* at ¶ 35) Plaintiff claims that the last sentence of this statement was false or misleading because the performance goals under the 1988 plan had not been reapproved since 1997. (*Id.*) As the directors considered the tax consequences of § 162(m) and knew that the 1988 plan had not been reapproved in ten years, plaintiff alleges that making such statements in the 2007 proxy statement was a breach of the

4

duties of loyalty and care, including the directors' disclosure duties. (*Id.*)

Plaintiff alleges that the directors knew that the 2007 proxy statement was false or misleading because the 2008 proxy statement did not contain the representation that "[s]tockholders have approved the material terms of awards to the covered executives." (*Id.* at ¶¶ 37-38) The proxy statements for 2008, 2009, 2010, 2011, and 2012 represented that the 1988 plan was "Dow's omnibus stockholder-approved plan for equity awards to employees." (*Id.* at ¶ 37) Plaintiff alleges that the revised language used in the proxy statements between 2008 and 2012 stating that the committee would take "advantage of Section 162(m) whenever feasible" ignores the point that awarding tax-deductible compensation is not feasible under the 1988 plan because such performance goals were never reapproved by stockholders. (*Id.* at ¶ 38)

Plaintiff alleges that the statute of limitations under Delaware law is tolled as to the years 2006-2012 based on the misrepresentations in the proxy statements in 2007-2012. (*Id.* at ¶¶ 40-47)

### C. The 2012 Plan

In 2012, the proxy statement solicited proxies to approve the Dow 2012 Stock Incentive Plan ("2012 plan") to replace the 1988 plan and the 2003 non-employee directors' stock incentive plan (the "2003 directors' plan"), which awarded only non-employee directors. Plaintiff alleges certain representations in the 2012 proxy statement were false. For example, the representation that the 1988 plan was "'Dow's omnibus stockholder-approved plan for equity awards to employees' was a materially false or misleading statement because the stockholders had not reapproved it since

5

1997" as required by Treasury Regulations.   Plaintiff alleges that the 2012 proxy
statement "failed to properly explain the dramatic increase in Director and NEO
compensation" and "misrepresented the tax-deductibility" of the 2012 plan.  (D.I. 9 at ¶¶
48-52)

The 2012 plan "provides that each participant can receive an annual grant of
equity incentive compensation equal to as many as 3,000,000 Dow common shares
and an annual cash incentive bonus of as much as $15,000,000."  (D.I. 9 at ¶)  Using
the approximate price of $32 per share of Dow stock on May 10, 2012 when the plan
was proposed, each participant "can receive in a single year as much as $96,000,000 in
stock plus $15,000,000 in cash, for a total of $111 million per participant, per
year.  Previously, each director was limited to an annual maximum of approximately
$800,000 (25,000 shares), and each NEO was limited to an annual maximum of
approximately $20 million."  The 2012 proxy statement failed to disclose "that potential
director compensation was being increased more than a hundred-fold, including cash
for the first time, under the 2012 [p]lan, and potential NEO compensation was being
quintupled under the 2012 [p]lan."  (Id. at ¶¶ 53-56)

Plaintiff alleges that, to be deductible, a compensation plan must either
provide the "formula used to calculate the amount of compensation to be paid to the
employee if the performance goal is attained" or disclose "the maximum amount of
compensation that could be paid to any employee."  (Id. at ¶ 58 (citing I.R.C. § 162(m),
Treas. Reg. § 1.162-27 (e)(4)(I)))  Plaintiff maintains that the maximum award under the
2012 plan, $111 million per participant, is so high it is illusory.  Moreover, it offends the
"reasonable" requirement of the IRC.  (Id. at ¶ 59 (citing I.R.C. § 162(a)(1))  Plaintiff

6

alleges that the 2012 plan does not comply with the I.R.C.; instead it creates "an infinite

number of performance goals from which the [c]ommittee may later select to determine

performance," which is the same as telling "shareholders that the compensation

committee will later decide what criteria to use." This is contrary to the IRC, which

requires that performance criteria be fully-defined and disclosed to enable

shareholders' informed approval. (*Id.* at ¶¶ 60-65)

Plaintiff alleges that the 2012 proxy statement made materially false or

misleading representations as to the complexity of the IRC, stating in part that:

> The rules and regulations promulgated under Section 162(m) are
> complicated and subject to change from time to time, sometimes with
> retroactive effect[]. In addition, a number of requirements must be met in
> order for particular compensation to so qualify. As such, there can be no
> assurance that any compensation awarded or paid under the 2012
> Incentive Plan will be fully deductible under all circumstances.

(*Id.* at ¶¶ 66-68) Plaintiff alleges that the 2012 proxy statement also omits disclosing

the approximate number of participants in the 2012 plan. (*Id.* at ¶¶ 69-70)

## III. STANDARD OF REVIEW

### A. Federal Rule of Civil Procedure 23.1

Pursuant to Federal Rule of Civil Procedure 23.1(b)(3), a shareholder bringing a

derivative action must file a verified complaint that "state[s] with particularity:"

> (A) any effort by the plaintiff to obtain the desired action from the directors
> or comparable authority and, if necessary, from the shareholders or
> members; and
> (B) the reasons for not obtaining the action or not making the effort.

Therefore, Rule 23.1 provides a heightened pleading standard. "Although Rule

23.1 provides the pleading standard for derivative actions in federal court, the

7

substantive rules for determining whether a plaintiff has satisfied that standard 'are a matter of state law.'" *King v. Baldino*, 409 Fed. Appx. 535, 537 (3d Cir. 2010) (citing *Blasband v. Rales*, 971 F.2d 1034, 1047 (3d Cir. 1992)). "Thus, federal courts hearing shareholders' derivative actions involving state law claims apply the federal procedural requirement of particularized pleading, but apply state substantive law to determine whether the facts demonstrate [that] demand would have been futile and can be excused." *Kanter v. Barella*, 489 F.3d 170, 176 (3d Cir. 2007).

> In this regard, the Delaware Supreme Court has explained that the entire question of demand futility is inextricably bound to issues of business judgment and the standard of that doctrine's applicability.... It is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.

*Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), overruled on other grounds by *Brehm v. Eisner*, 746 A.2d 244, 253-54 (Del. 2000). "The key principle upon which this area of . . . jurisprudence is based is that the directors are entitled to a presumption that they were faithful to their fiduciary duties." *Beam ex. rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1048 (Del. 2004). Therefore, the burden is on the party challenging a board's decision to establish facts rebutting the presumption that the business judgment rule applies. *Levine v. Smith*, 591 A.2d 194, 205-06 (Del. 1991). By promoting the exhaustion of intracorporate remedies as an alternate dispute resolution over immediate recourse to litigation, "the demand requirement is a recognition of the fundamental precept that directors manage the business and affairs of corporations." *Aronson*, 473 A.2d at 811-12.

## B. Federal Rule of Civil Procedure 12(b)(6)

8

A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint's factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (internal quotation marks omitted) (interpreting Fed. R. Civ. P. 8(a)). Consistent with the Supreme Court's rulings in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Third Circuit requires a two-part analysis when reviewing a Rule 12(b)(6) motion. *Edwards v. A.H. Cornell & Son, Inc.*, 610 F.3d 217, 219 (3d Cir. 2010); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, a court should separate the factual and legal elements of a claim, accepting the facts and disregarding the legal conclusions. *Fowler*, 578 F.3d. at 210-11. Second, a court should determine whether the remaining well-pled facts sufficiently show that the plaintiff "has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). As part of the analysis, a court must accept all well-pleaded factual allegations in the complaint as true, and view them in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). In this regard, a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994).

9

The court's determination is not whether the non-moving party "will ultimately prevail" but whether that party is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

## IV. DISCUSSION

### A. I.R.C. § 162(m)

For a publicly held corporation, compensation of the chief executive officer and the four highest compensated executive officers in excess of $1 million is typically not tax-deductible. An exception exists for certain performance-based compensation. I.R.C. § 162(m). Under the I.R.C. and corresponding Department of Treasury Regulations, such performance-based compensation must be based on "the attainment of one or more pre-established, objective performance goals" that are determined by a compensation committee comprised solely of at least two outside directors. *See* I.R.C. § 162(m)(4)(C)(i); Treas. Reg. § 1.162-27(e)(2)(i). "The terms of an objective formula or standard must preclude discretion to increase the amount of compensation payable that would otherwise be due upon attainment of the goal." Treas. Reg. § 1.162-27(e)(2)(iii)(A). The terms of the remuneration must also be disclosed to shareholders

10

and be approved "by a majority of the vote in a separate shareholder vote . . . ." I.R.C.
§ 162(m)(4)(C)(ii).

## B. Demand Futility

Plaintiff alleges five counts related to the 2012 proxy statement: count I alleging
that the 2012 proxy statement was materially false or misleading because it did not
disclose the extraordinary increase in director and NEO maximum compensation under
the 2012 plan; count II alleging that the 2012 proxy statement was materially false or
misleading in that it represented that the 2012 plan was designed to enable Dow to pay
its NEOs compensation that would be tax-deductible under IRC § 162(m); count III
alleging that the 2012 proxy statement failed to disclose the number of eligible
participants in the 2012 plan; count IV a claim for waste under the 2012 plan; and count
V alleging unjust enrichment as a result of the compensation under the 2012 plan.
Count VI alleges false statements in the 2007-2012 proxy statements concerning the
tax-deductibility of the 1988 plan under § 162(m) and for the directors' failure to seek
reapproval of the 1988 plan in 2002 and thereafter.

As to the 2012 plan, plaintiff alleges that making a demand on the board is futile
because the entire board is interested in the stockholders' approval of the 2012 plan
and benefitted from the misrepresentations and omissions in the 2012 proxy statement.
Moreover, each of the board members is eligible to participate in the 2012 plan, thus, is
interested in the payments to be made under the 2012 plan. (D.I. 9 at ¶ 72)

Demand is excused if a plaintiff raises a reasonable doubt that a majority of the
board was disinterested and independent, or that the challenged acts were a result of
the board's valid business judgment. *See Aronson*, 473 A.2d at 814. Under the first

11

prong of *Aronson*, if the factual allegations raise a reasonable doubt that a majority of the board consists of disinterested and independent directors, then the protections of the business judgment rule are not available to the board. *Aronson*, 473 A.2d at 814-15. There are two ways a director can be deemed "interested" in a transaction. First, "[a] director is interested if he will be materially affected, either to his benefit or detriment, by a decision of the board, in a manner not shared by the corporation and the stockholders." *Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995); *see also Orman v. Cullman*, 794 A.2d 2, 25 n.50 (Del. Ch. 2002). Materiality is assessed based on a particular director's financial circumstances. *Orman*, 794 A.2d at 23. The second occurs where "a director stands on both sides of the challenged transaction;" this latter way of showing interestedness does not require allegations of materiality. *Id*. at 25 n.50.

The fact that each director is eligible to participate in the 2012 plan is insufficient, in and of itself, to establish that every director is interested in the disputed transaction. Plaintiff does not disagree that had the 2012 plan not been approved, the 2003 directors' plan would have remained in place and compensation continued under such plan. NEO compensation would have continued under the 1988 plan. *See Orman v. Cullman*, 794 A.2d 5, 23 (Del. Ch. 2002) (explaining that "in the absence of self-dealing, it is not enough to establish the interest of a director by alleging that he received **any** benefit not equally shared by the stockholders. Such benefit must be alleged to be **material** to that director."); *Seinfeld v. Slager*, Civ. No. 6462, 2012 WL 2501105, at \*2 (Del. Ch. June 29, 2012) (A director is not interested solely because he receives

customary compensation for his board service.); *A.R. DeMarco Enters., Inc. v. Ocean Spray Cranberries, Inc.*, Civ. No. 19133, 2002 WL 31820970, at \*5 (Del. Ch. Dec. 4, 2002) ("It is well established in Delaware law that ordinary director compensation alone is not enough to show demand futility.").

However, the 2012 plan's substantial increase in director and NEO theoretical compensation (with new cash compensation for non-employee directors capped at \$15 million per year) allows the directors to award themselves substantial compensation without oversight. This evidences that the directors were interested and demand is excused as to the claims involving the 2012 plan.[4] See Seinfeld, 2012 WL 2501105, at \*12 ("[t]he plan . . . confers on the [d]efendant [d]irectors the theoretical ability to award themselves as much as tens of millions of dollars per year, with few limitations; therefore, . . . the [d]efendant [d]irectors are interested in the decision to award themselves a substantial bonus."[5])

As to the 1998 plan, plaintiff alleges that the following was not a product of a

---

[4]Even though, as defendants point out, such theoretical maximum compensation was never awarded under the 2003 directors' plan. The directors were awarded between 750 shares (in 2004 and 2005) to 5360 shares (in 2010) for the years 2003-2013, substantially less than the 25,000 share limit in the 2003 directors' plan.

[5]As to the business judgment rule, the court explained that

even though the stockholders approved the plan, the Defendant Directors are interested in self-dealing transactions under the Stock Plan. The Stock Plan lacks sufficient definition to afford the Defendant Directors protection under the business judgment rule. . . . [T]here must be some meaningful limit imposed by the stockholders on the Board for the plan to . . . receive the blessing of the business judgment rule . . . .

*Seinfeld*, 2012 WL 2501105, at \*12.

13

valid exercise of business judgment. "[T]he [c]ommittee, at times with defendant Liveris constituting a majority of the board of directors," made false disclosures related to the tax deductibility of the 1988 plan in the proxy statements from 2007-2012. After 2007, the board "made a conscious decision to cover up the non-tax deductibility . . . and refrain[ed] from seeking reapproval of the 1988 [p]lan." The board paid NEO compensation after failing to seek reapproval. (D.I. 9 at ¶ 73)

Delaware law does not excuse demand for derivative claims based on nondisclosures in a proxy statement under the second prong of *Aronson*. *Abrams v. Wainscott*, Civ. No. 11-297, 2012 WL 3614638, at \*3 (D. Del. Aug. 21, 2012) (citing *Bader v. Blankfein*, 2008 WL 5274442, at \*6 (E.D.N.Y. Dec.19, 2008), and *Freedman v. Adams*, 2012 WL 1099893, at \*16 n. 155 (Del. Ch. Mar.30, 2012)). The 1997 proxy statement stated that "[c]ertain limits and other requirements are added to the Plan by the Amendment to ensure that awards . . . **may** qualify as performance-based compensation for the purpose of Section 162(m)." (D.I. 9 at ¶ 17) The proxy statements from 2003-2012 do not provide detailed discussion of the rules regarding tax deductibility, including the five-year reapproval rule. Plaintiff recognizes that the 1988 plan provided for employee stock-based compensation, not director compensation. To the extent plaintiff alleges NEO awards as violations, plaintiff has not alleged any facts to substantiate his allegations that any such misleading disclosures were knowing and intentional. *Cf. Weiss v. Swanson*, 948 A.2d 433, 442-43 (Del. Ch. 2008) (finding that the well-pleaded allegations in the complaint support inferences that the directors "in violation of their fiduciary duties, intended to circumvent the restrictions

14

found in the plan" and make grants that violated the option plan); *Ryan v. Gifford*, 918 A.2d 341, 355 (Del. Ch. 2007) ("Plaintiff here points to specific grants, specific language in option plans, specific public disclosures, and supporting empirical analysis to allege knowing and purposeful violations of shareholder plans and intentionally fraudulent public disclosures."). The court concludes that demand is not excused for the claim related to the 1988 plan. Defendants' motion to dismiss is granted in this regard.

## C. Failure to State a Claim

As demand was excused for the claims relating to the 2012 plan,[6] the court analyzes each of these claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

### 1. False and misleading statements in the proxy statements

Section 14(a) of the Exchange Act makes it unlawful for anyone to solicit proxies that are in contravention of rules and regulations promulgated by the SEC. 15 U.S.C. § 78n et seq. Rule 14a–9, promulgated pursuant to § 14(a), states in relevant part:

> No solicitation subject to this regulation shall be made by means of any proxy statement ... which, at the time ... it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

---

[6]"[W]here plaintiff alleges particularized facts sufficient to prove demand futility under the second prong of *Aronson*, that plaintiff a fortiori rebuts the business judgment rule for the purpose of surviving a motion to dismiss pursuant to Rule 12(b)(6)." *Ryan*, 918 A.2d at 357 (plaintiff alleged "knowing and purposeful violations of shareholder plans and intentionally fraudulent public disclosures.") In the case at bar, the court concluded that the directors were interested in compensating themselves. This conclusion is not an evaluation of the second *Aronson* prong.

17 C.F.R. § 240.14a–9(a). Section 14(a) seeks to prevent corporate directors or officers from procuring shareholder approval for transactions through proxy solicitations that contain false or incomplete disclosure of material information. *See J.I. Case Co. v. Borak*, 377 U.S. 426, 431 (1964); *Seinfeld v. Becherer*, 461 F.3d 365, 370 (3d Cir. 2006); *Shaev v. Saper*, 320 F.3d 373 (3d Cir. 2003); *Gould v. Am.-Hawaiian S.S. Co.*, 535 F.2d 761 (3d Cir. 1976).

To state a claim under § 14(a), a plaintiff must allege that (1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction. *Shaev*, 320 F.3d at 379 (citation omitted). A misrepresentation or omission is considered material if a reasonable shareholder would have considered it important when deciding how to vote. *See TSC Indus. Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).

The 2012 proxy statement disclosed the new theoretical maximum compensation, but did not disclose the compensation provided under the 1988 plan and 2003 directors' plan or the difference in the theoretical maximums. Plaintiff alleges such omissions violated defendants' duty of disclosure. In *Shaev*, the Third Circuit considered

> [t]he Proxy Statement's omission of the performance goals . . . material because the stockholders had no way of knowing that [defendant] had not earned the $3,285,714 bonus under the terms of the currently existing plan. The Proxy Statement contains no discussion of the 1997 Plan or how the 2000 amendment compares with the 1999 supplement or the 1997 Plan. The defendants respond that the two Plans have little to do

16

with one another: "there was no need to publish the 1997 Plan again in the Proxy Statement nor was there a need to compare it to the 2000 Plan since both were to be in effect if the shareholders approved the 2000 Plan." This argument is sophistical because the 2000 amendment was not a stand-alone Plan. On the contrary, it was an amendment to an unstated supplement. To determine the overall incentive effects, stockholders would have had to read the three documents together, and they did not have them.

*Shaev*, 320 F.3d at 382; *see also Seinfeld v. Becherer*, 461 F.3d 365, 370 (3d Cir.

2006) (the proxy statement "did not violate Rule 14a-9, as Honeywell prominently

displayed the maximum number of shares available and the circumstances under which

that number could increase").

The 2012 plan was a stand alone plan and the proxy statement summarized

such plan.[7] The summary included the shares available under the plan ("44,500,000

shares"), as well as an explanation of the "share counting," "award limitations,"[8]

_____

[7]"The following summary of the 2012 Incentive Plan is qualified in its entirety by reference to the complete text of the 2012 Incentive Plan as set forth in Appendix A to this Proxy Statement." (D.I. 14, ex. P at 51)

[8]Specifically,

• No participant may be granted stock options, restricted stock, RSUs, performance shares or other share-based awards for more than 3,000,000 shares of Dow common stock during any 12-month period if the award is intended to be "performance-based compensation" under Section 162(m) of the Code.
• The maximum dollar value that may be earned by any participant for any 12-month performance period (as established by the Committee) with respect to performance awards which are denominated in cash and intended to be "performance-based compensation" under Section 162(m) of the Code is $15,000,000.

(D.I. 14, ex. P at 52-53)

"qualifying performance criteria," and "tax consequences."[9] (D.I. 14, ex. P at 51-55)

Moreover, the 2012 proxy statement described the tax-deductibility of the 2012

plan pursuant to § 162(m) as follows:

> [t]he 2012 Incentive Plan is **designed to allow** Dow to grant awards that
> satisfy the requirements for the performance-based compensation
> exclusion from the deduction limitations under Section 162(m) of the
> Code. . . . Accordingly, the 2012 Incentive Plan has been structured in a
> manner such that awards under it can satisfy the requirements for the
> performance-based compensation exclusion from the deduction
> limitations under Section 162(m) of the Code although **Dow cannot
> guarantee** that awards under the 2012 Incentive Plan will actually qualify
> as performance-based compensation under Section 162(m).

(D.I. 14, ex. P at 53 (emphasis added)) Also,

> Dow policy does not require all executive compensation to be
> tax-deductible. In the interest of flexibility and overall benefit for the
> Company's stockholders, the Committee will continue to facilitate the
> awarding of responsible but adequate executive compensation while
> taking advantage of Section 162(m) whenever feasible. Amounts paid
> under the compensation program, including base salary, Performance
> Awards and grants of Deferred Stock (Restricted Stock and Restricted
> Stock Units) may not qualify as performance based compensation
> excluded from the limitation on deductibility.

(D.I. 14, ex. P at 30)

Plaintiff argues that the 2012 plan was **not** "designed" to award tax deductible

compensation because it omitted certain variables required by Treasure Regulation §

1.162; therefore, the above statements were false and misleading. The contents of the

proxy statement make clear, however, that Dow did not guarantee that the 2012 plan

---

[9]Plaintiff's citation to *St. Louis Police Ret. Sys. v. Severson*, Civ. No. 12-5086,
2012 WL 5270125 (N.D. Cal. Oct. 23, 2012) is equally unavailing as it involved a 2012
proxy statement in which an amended plan was proposed and the original plan
contained pertinent information. *Id*. at \*5-6. Without reference to the original plan, the
proxy statement did "not accurately depict the purposes or effects of the [p]roposed
[a]mendment . . . information . . . material to the shareholders' vote." *Id*. at \*6.

would be tax deductible.  Indeed, as the excerpts above evidence, Dow specifically explained that such compensation might not be tax deductible.  Therefore, the court concludes that such statements are not false and misleading even if the plan was ultimately not tax deductible.[10]  *See Seinfeld v. O'Connor*, 774 F. Supp. 2d 660, 666-67 (D. Del. 2011) (The court rejected plaintiff's interpretation of the proxy statement, stating that "[i]t does not assert that the [plan] **will** be tax deductible, only that it is **intended** to be deductible under I.R.C. § 162(m) . . . and adds, correctly, that [bonus] payments might not be deductible."); *cf. Seinfeld v. Barrett*, Civ. No. 05-298, 2006 WL 890909, at * (D. Del. Mar. 31, 2006) (denying summary judgment when plaintiff asserted that certain material variables regarding tax deductibility were omitted from the proxy statement, when it "provided that the purpose of the [plan] was to guarantee that compensation paid to executives over $1,000,000 would be tax deductible under Section 162(m) of the Internal Revenue Code.").

Plaintiff next alleges that the 2012 proxy statement did not include the number of eligible participants in the 2012 plan.  The Exchange Act requires that a proxy statement seeking action regarding a compensation plan "furnish the following information:"  "[I]dentify each class of persons who will be eligible to participate therein, indicate the approximate number of persons in each such class, and state the basis of such participation."  17 C.F.R. § 240.14a-101.  The 2012 proxy statement articulated the classes of persons eligible to participate: "**Eligibility**.  The officers, executives, and other employees of Dow or its subsidiaries and Dow's non-employee directors will be

---

[10]The court does not reach plaintiff's arguments regarding the specific omitted variables.

eligible to participate in the 2012 Incentive Plan." (D.I. 14, ex. P at 52) The proxy statement informed shareholders that Dow's form 10-K was included as part of the proxy statement.[11] The number of employees was described in Dow's 2011 form 10-K, which states "[p]ersonnel count was 51,705 at December 31, 2011, 49,505 at December 31, 2010 and 52,195 at December 31, 2009" under the bold heading "**Employees**." (D.I. 14, ex. T at 12, 32) While plaintiff complains that "personnel count" is not found in the 2012 plan or in the proxy statement, such term is under the heading of "employees" and, thus, would "approximately" indicate the number of employees eligible for participation in the 2012 plan. Plaintiff has not sufficiently alleged "false or incomplete disclosure of material information" in the 2012 proxy statement and defendants' motion to dismiss is granted in this regard.

### 2. Waste of Corporate Assets and Unjust Enrichment

A claim of waste refers to "an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade." *White v. Panic*, 783 A.2d 543, 554 (Del. 2001) (quoting *Brehm*, 746 A.2d at 263). "To prevail on a waste claim . . . the plaintiff must overcome

---

[11]On the first page, the proxy statement provides:

**IMPORTANT NOTICE REGARDING THE AVAILABILITY OF
PROXY MATERIALS FOR THE STOCKHOLDER MEETING TO BE HELD ON
THURSDAY, MAY 10, 2012 AT 10:00 A.M. EDT
The 2012 Proxy Statement and 2011 Annual Report (with Form 10-K)
are available at https://materials.proxyvote.com/260543**

(D.I. 14, ex. P at 5)

the general presumption of good faith by showing that the board's decision was so egregious or irrational that it could not have been based on a valid assessment of the corporation's best interests." *Id*. at 554 n. 36. "[T]he decision must go so far beyond the bounds of reasonable business judgment that its only explanation is bad faith." *Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005). "Unjust enrichment is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010) (citation omitted) (internal quotation marks omitted). It requires: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy at law." *Id*.

In the case at bar, plaintiff has not alleged that the board paid wasteful amounts of compensation to any director or NEO, or that Dow actually incurred a loss as a result of the theoretical maximums for compensation in the 2012 plan. Without such allegations, plaintiff's claim cannot survive a motion to dismiss. *See Boeing Co. v. Shrontz*, Civ. No. 11273, 1992 WL 81228, at *4 (1992); *cf. Resnik v. Woertz*, 774 F. Supp. 2d 614, 633 (2011) (finding that as defendant "faces substantial and avoidable tax liability and incentive compensation payments . . . as a result of the misrepresentations in the Proxy Statement," plaintiff's claim of corporate waste survived a motion to dismiss.).

Plaintiff has not pled facts to establish an impoverishment, i.e., that any "excessive" awards were actually made under the 2012 plan. To the extent that plaintiff

bases his claim on compensation that may not be tax deductible, Delaware law does not require a corporation to minimize taxes. *Freedman v. Adams*, Civ. No. 4199, 2012 WL 1099893, at *12 (Del. Ch. Mar. 30, 2012) Defendants' motion to dismiss is granted.

## V. CONCLUSION

For the foregoing reasons, the court grants defendants' motion to dismiss. An appropriate order shall issue.