IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JEFFREY KAUFMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 13-359-SLR |
| | ) |
| ARNOLD A. ALLEMANG, AJAY | ) |
| BANGA, JACQUELINE K. BARTON, | ) |
| JAMES A. BELL, JEFF M. FETTIG, | ) |
| JOHN B. HESS, ANDREW N. | ) |
| LIVERIS, PAUL POLMAN, DENNIS | ) |
| H. REILLEY, JAMES M. RINGLER, | ) |
| RUTH G. SHAW, WILLIAM | ) |
| WEIDEMAN, JOE HARLAN, CHARLES | ) |
| KALIL, GEOFFERY MERSZEI, and | ) |
| THE DOW CHEMICAL COMPANY, | ) |
| | ) |
| Defendants, | ) |
| | ) |

**MEMORANDUM**

At Wilmington this 18th day of November, 2014, having reviewed plaintiff's motion for reconsideration and the response thereto; I will grant the motion (D.I. 28) for the reasons that follow:

1. **Standard of review.** A motion for reconsideration is the "functional equivalent" of a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e). *See Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1352 (3d Cir. 1990) (citing *Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 348 (3d Cir. 1986)). The standard for obtaining relief under Rule 59(e) is difficult to meet. The purpose of a motion for reconsideration is to "correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*,

176 F.3d 669, 677 (3d Cir. 1999). A court should exercise its discretion to alter or amend its judgment only if the movant demonstrates one of the following: (1) a change in the controlling law; (2) a need to correct a clear error of law or fact or to prevent manifest injustice; or (3) availability of new evidence not available when the judgment was granted. *See id.* A motion for reconsideration is not properly grounded on a request that a court rethink a decision already made and may not be used "as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990); *see also Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993).

2. **Discussion.** In the September 30, 2014 memorandum I issued granting defendants' motion to dismiss (D.I. 26), I addressed the question of whether the proxy statement at issue adequately "furnished" certain required information, including "each class of persons who will be eligible to participate" in the proposed compensation plan, and "the approximate number of persons in each such class." 17 C.F.R. § 240.14a–101. I stated in this regard that "[t]he proxy statement informed shareholders that Dow's form 10-K was included as part of the proxy statement." (D.I. 26 at 20) That was an incorrect description. As related, the following notice was included on the first page of the proxy statement:

> IMPORTANT NOTICE REGARDING THE **AVAILABILITY OF PROXY MATERIALS** FOR THE STOCKHOLDERS MEETING TO BE HELD ON THURSDAY, MAY 10, 2012 AT 10:00 A.M. EDT
> **The 2012 Proxy Statement and 2011 Annual Report (with Form 10-K) are available** at http://materials.proxyvote.com/260543

2

(D.I. 14, ex. P at 5) (emphasis added). Therefore, in the first instance, my statement should have read: "The proxy statement informed shareholders that Dow's form 10-K was included as part of the proxy **materials**."

3. With respect to whether such notice passed muster under the applicable regulations, as noted above, a proxy statement seeking action regarding a compensation plan must "furnish" "the approximate number of persons" in each class of persons eligible to participate in the plan. 17 C.F.R. § 240.14a-101. There is no dispute that the proxy statement at issue did not do so. The question that remains is whether I incorrectly concluded, first, that it was appropriate to look beyond the proxy statement to the form 10-K to find such information and, if so, whether the information included in the form 10-K actually provided the required information.

4. With respect to the first question, I start with the requirement that "each proxy statement . . . shall be accompanied or preceded by an annual report to security holders." 17 C.F.R. § 240.14a-3(b). It has been observed that, in this regard, a company's annual report to shareholders

> is soliciting material in a functional sense. See Sommer, *The Annual Report: A Prime Disclosure Document*, 1972 Duke L.J. 1093, 1119. But a curiously cautious SEA Rule 14a-3(c), 17 C.F.R. § 240.14a-3(c), specifies that the report, although it must be sent to the SEC, "is not deemed to be 'soliciting material' or to be 'filed' with the Commission or subject to this regulation otherwise than as provided in this rule . . . except to the extent that the issuer specifically requests that it be treated as part of the proxy soliciting material or incorporates it in the proxy statement by reference." The background for this provision includes company opposition to possible liability for annual reports, and administrative reluctance to interfere with communications to shareholders. See Sommer, *The Annual Report: A Prime Disclosure Document*, 1972 Duke L.J. 1093, 1100-1104. . . .

2 Bromberg & Lowenfels on Securities Fraud § 5.211 (2d ed.) (2014). Interestingly, one

of the few cases discussed in the above publication was that issued by Judge Latchum of this court, who "read literally the language just quoted from 14a-3(c) and held that 14a-9 imposed no duty to include in an August 3, 1970 proxy statement corrections of a Dec. 31, 1969 annual report" which allegedly "had ceased to be accurate, because of events which had occurred during the seven-month period after the date of the annual report." *Id., citing Dillon v. Berg*, 326 F. Supp. 1214, 1230 (D. Del. 1971), aff'd 453 F.2d 876 (3d Cir. 1971).

5. With this background in mind, which I admittedly did not have in mind at the time I issued my decision, it seems to me that, since Rule 14a-3(c) was put in place to protect companies from expanded disclosure obligations, I should follow Judge Latchum's approach and impose a strict construction of the Rule. To put the point another way, absent a specific indication that Dow intended its annual report and form 10-K to be subject to the disclosure requirements of Rule 14a-9, we should not look to those materials for purposes of supplementing the proxy statement.[1]

6. This is especially appropriate here, where "the approximate number of persons in each . . . class"[2] was not provided in any of the "proxy materials."[3] More particularly, the 2012 proxy statement can be read to articulate several "classes" of

---

[1] According to the Bromberg & Lowenfels treatise (as noted by Judge Latchum), virtually no company actually does "specifically request" that the annual report be deemed "soliciting material," nor should they. 2 Bromberg & Lowenfels on Securities Fraud § 5:211 (2d ed.).

[2] *See* 17 C.F.R. § 240.14a-101.

[3] As described by defendants, as opposed to "soliciting materials" as described by Rule 14a-3(c).

4

persons eligible to participate in the proposed compensation plan, to wit, "officers, executives, and other employees of Dow or its subsidiaries and Dow's non-employee directors." (D.I. 14, ex. P at 52) Although the form 10-K materials described the "personnel count" of total employees, the approximate number of eligible participants in **each class** was nowhere articulated.

7. **Conclusion**. At this stage of the proceedings, where there may be issues of fact that need to be developed,[4] I will grant the motion for reconsideration and deny defendants' motion to dismiss in this regard. An appropriate order shall issue.

_____
United States District Judge

---

[4]For instance, defendants may challenge the issue of whether there were distinct "classes" of eligible participants. Moreover, plaintiff may not be able to sufficiently demonstrate an injury. *Shaev v. Saper*, 320 F.3d 373, 379 (3d Cir. 2003) (To state a claim under § 14(a), a plaintiff must allege inter alia that the "proxy statement contained a material misrepresentation or omission which . . . caused the plaintiff injury . . . .").